UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
----------------------------------------------------------------x
MAMNOON AHMAD KHAN,

      Plaintiff,       12-cv-12333

 -against-            **COMPLAINT**
                  **WITH JURY DEMAND**
ONEBEACON INSURANCE COMPANY,
CHARLES KRETSCHMAR, AND JAMES
MCKENNA,

      Defendants.
----------------------------------------------------------------x

## COMPLAINT AND JURY DEMAND

  Plaintiff, Mamnoon Ahmad Khan, by his attorneys, Liddle & Robinson, L.L.P., alleges as follows:

### NATURE OF THE ACTION

  1.  This is an action for unlawful discrimination based upon race, religion, and national origin, as well as for retaliation for complaining of such discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), 42 U.S.C. § 1981, and provisions of the Massachusetts Fair Employment Practices Law.

### PARTIES

  2.  Plaintiff is a resident of the Commonwealth of Massachusetts, residing in the town of Plainville, County of Norfolk. Mr. Khan was born and raised in Pakistan and is an American-Muslim. He immigrated to the United States almost thirty years ago, and became a United States citizen in 1992. He began working for OneBeacon Insurance Company ("OneBeacon") in 1986.

3. Defendant OneBeacon is a corporation that maintains its business at 150 Royall Street in the town of Canton, in the Commonwealth of Massachusetts.

4. Defendant Charles Kretschmar, being sued in his individual capacity, is a resident of the Commonwealth of Massachusetts. He is a current employee of OneBeacon.

5. Defendant James McKenna, being sued in his individual capacity, is a resident of the State of New York. He is a former employee of OneBeacon.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action under 28 U.S.C §§ 1331 and 1367.

7. Pursuant to state and federal law requirements, Plaintiff timely filed his discrimination claims at the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC") before filing this Complaint.

8. In August 2012, Mr. Khan requested that his administrative filings be withdrawn so that he could file suit in this Court. On November 8, 2012, a dismissal letter was issued by MCAD. A copy of that letter is attached hereto as Exhibit A.

9. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in the District of Massachusetts.

## FACTS

### Mr. Khan's Distinguished Career at OneBeacon Extends Over Twenty Years

10. In March of 1986, Mr. Khan commenced employment with OneBeacon, a wholly-owned subsidiary of White Mountain Insurance Group.

11. Between 1986 and April 2007, Mr. Khan held a number of Claim Examiner positions, including supervisory ones, with OneBeacon.

12. In April of 2007, Mr. Khan resigned from OneBeacon to return to Pakistan in order to take care of his sick and elderly parents.

13. At the time, his then manager, Ann Bender, and then Head of Claims, Philip Sibilia, told Mr. Khan that he was welcome to return to employment at OneBeacon at any time.

14. From 1986 through April 2007, Mr. Khan performed his duties in a manner that exceeded expectations. Mr. Khan received numerous accolades from the company, including bonuses in recognition of his outstanding performance.

15. Upon information and belief, from 1986 through April 2007, Mr. Khan was one of OneBeacon's top Claim Examiners.

### OneBeacon Discriminates Against Mr. Khan On The Basis Of His Race, Religion And/Or National Origin

16. In or about February 2010, Mr. Khan returned to the employ of OneBeacon as a Claims Examiner in the company's Large Loss Unit.

17. On or about April 17, 2010, Mr. Khan attended a large staff meeting in an auditorium with approximately sixty other claim representatives and managers.

18. Ms. Bender and Mr. Kretschmar, the company's Litigation Manager, standing at the center of the stage, began introducing the claim representatives and managers. During the introduction of Mr. Khan, Ms. Bender said that Mr. Khan had previously worked for the company and had recently returned from Pakistan. Then Mr. Kretschmar added that Mr. Khan "is not a terrorist because [he] did not see [Mr. Khan's] picture in the paper *yet*."

19. Despite the presence of senior managers, attorneys, and representatives of the OneBeacon Human Resources Department ("HR") in the meeting, no action to address this blatantly discriminatory comment was taken.

20. During a recess of the meeting, Mr. Khan walked outside the building past one group of four employees. The group looked at him with disgust and two of the individuals spit at Mr. Khan as he walked past them.

21. Upon information and belief, Mr. Kretschmar's discriminatory comments facilitated the creation of a hostile work environment.

22. Upon information and belief, had members of HR or executives at OneBeacon reprimanded Mr. Kretschmar, Mr. Khan's colleagues would not have spit at him and Mr. Khan would not have been the victim of further discrimination.

23. When Mr. Khan attempted to discuss the discriminatory comment with Mr. Kretschmar several months later, Mr. Kretschmar responded that he did not "say anything that other American [employees] did not think of [Mr. Khan]."

24. Mr. Kretschmar's discriminatory conduct was not limited to an isolated incident or a momentary lapse in judgment.

25. On numerous occasions following the April staff meeting, Mr. Kretschmar made racially charged remarks in Mr. Khan's presence and otherwise sought to make him feel uncomfortable.

26. For example, from April 2010 until HR told Mr. Kretschmar to stop discriminating against Mr. Khan in November 2010, Mr. Kretschmar, on multiple occasions, referred to Mr. Khan as "Dipankar."

27. Upon information and belief, Dipankar is the surname of a former employee of the company who was of Indian descent.

28. When Mr. Kretschmar called Mr. Khan "Dipankar," he did so in a hostile and sarcastic tone of voice.

29. Throughout this time period, Mr. Khan politely requested that Mr. Kretschmar address him by his actual name and stop calling him "Dipankar," and informed Mr. Kretschmar that his name calling was hurtful, offensive and discriminatory in nature.

30. On numerous occasions, when Mr. Khan requested that Mr. Kretschmar stop calling him "Dipankar," Mr. Kretschmar disrespectfully and dismissively waived his hand at Mr. Khan.

31. On numerous occasions, when Mr. Khan requested that Mr. Kretschmar address him by his actual name, Mr. Kretschmar abruptly and rudely walked away from him.

## Mr. McKenna Also Discriminates Against Mr. Khan On The Basis of Race, Religion And/Or National Origin

32. Mr. Kretschmar was not the only individual at OneBeacon to discriminate against Mr. Khan.

33. When Mr. Khan returned to the employ of OneBeacon, Mr. McKenna was assigned as Mr. Khan's direct manager.

34. Upon information and belief, Mr. McKenna and Mr. Kretschmar are close friends.

35. Mr. McKenna and Mr. Khan worked at different OneBeacon offices.

36. Mr. McKenna subjected Mr. Khan to a hostile work environment—often mocking, yelling and swearing at him on the telephone and otherwise treating him with disdain for no reason.

37. On numerous occasions, Mr. McKenna behaved in such an extremely hostile manner towards Mr. Khan that co-workers stationed in Mr. McKenna's office who overheard his telephone conversations with Mr. Khan contacted Mr. Khan to inquire of his well-being.

38. Mr. McKenna was present, via telephone conference, at the April 17, 2010 meeting in which Mr. Kretschmar discriminated against Mr. Khan.

39. In the months following the incident of April 17, 2010, Mr. McKenna's discriminatory behavior increased. During this time period:

   a. Mr. McKenna refused to permit Mr. Khan to obtain insurance licenses required in other states but permitted American-born, Caucasian employees with less seniority to obtain necessary licenses.

   b. Mr. McKenna refused to permit Mr. Khan to have a laptop computer, but permitted American-born, Caucasian employees with less seniority to obtain laptops.

   c. Mr. McKenna told Mr. Khan on more than one occasion that he "should be happy you are here" in this country.

40. After Mr. Khan reported the April incident with Mr. Kretschmar to HR in September 2010, Mr. McKenna made Mr. Khan's work environment even more difficult by continuously berating him even more so than he had done previously.

41. Upon information and belief, Mr. McKenna treated Mr. Khan in a hostile manner in order to retaliate against Mr. Khan for complaining to HR about his friend, Mr. Kretschmar, and to encourage Mr. Khan to leave the company. For example:

    a. After Mr. Mr. Khan complained to an HR representative about discrimination he was experiencing at the company, Mr. McKenna told Mr. Khan that if he complained again, he would be fired.

    b. A co-worker advised Mr. Khan that she heard Mr. McKenna tell another manager that Mr. McKenna wished he could "kick [Mr. Khan's] ass."

42. Any time there was news about Pakistan in the media, Mr. McKenna made fun of Pakistan and mocked Mr. Khan's heritage.

43. This treatment caused Mr. Khan ongoing and severe emotional distress.

44. Upon information and belief, at no time did Mr. McKenna make such offensive comments to Caucasian or American-born employees, nor did he treat them with such contempt or disdain.

45. Upon information and belief, Mr. McKenna's comments were motivated by his animus towards Mr. Khan on account of his race, religion and/or national origin.

46. Mr. McKenna has engaged in a pattern and practice of discriminatory behavior at OneBeacon. In fact, upon information and belief, Mr. McKennna's employment was terminated due to his discrimination against an African-American female employee.

### After Mr. Khan Complains That He Is A Victim Of Discrimination, OneBeacon Seeks His Removal From The Company

47. In September 2010, Mr. Khan brought the above-described incidents of discrimination to the attention of HR representative Keri McDevitt.

48. In twenty-six years of employment at OneBeacon, Mr. Khan had previously never gone to HR or otherwise complained about any issue.

49. Mr. Khan had no choice but to complain because of the intense abuse he was experiencing at OneBeacon, and the pervasive pattern of discrimination which had created a hostile working environment.

50. Throughout the month of September, Mr. Khan met on multiple occasions with numerous members of HR, including but not limited to Keri McDevitt, Tom Schmitt and William Queenen.

51. In one such meeting, Keri McDevitt suggested that Mr. Khan meet one-on-one with Mr. Kretschmar to discuss the "terrorist" comment that he made in April 2010—which Mr. Khan did.

52. During that meeting, Mr. Kretschmar initially denied making any discriminatory comments. Mr. Kretschmar became angry at Mr. Khan, started screaming, and called him a liar. During the meeting, Mr. Kretschmar also told Mr. Khan that "everybody hates you here" and "nobody wants to talk to you."

53. After realizing, however, that he had made the comments in a room of dozens of people, at least some of whom could corroborate the statement, Mr. Kretschmar acknowledged that he had made the discriminatory comment about Mr. Khan.

54. Mr. Kretschmar, however, told Mr. Khan that he believed his discriminatory comment was justified because he did not "say anything that other Americans did not think" of Mr. Khan.

55. In another meeting between HR and Mr. Khan to address Mr. McKenna's discriminatory behavior, Keri McDevitt, Mr. McKenna, and Mark Dias (Mr. McKenna's supervisor) were present, along with Mr. Khan. Mr. Khan informed Mr. Dias and Ms. McDevitt that Mr. McKenna was being verbally abusive and discriminatory towards him.

56.   HR failed to resolve the ongoing discrimination that Mr. Khan was experiencing in the workplace. As a result, Mr. Khan decided to bring his concerns to senior management.

57.   On October 10, 2010, Mr. Khan sent an e-mail to Michael Miller, the Chief Executive Officer ("CEO") of OneBeacon, informing him that the discriminatory atmosphere he was experiencing at OneBeacon had not improved. This was one of several letters Mr. Khan sent to Mr. Miller.

58.   Mr. Miller, however, did nothing except refer the matter to another HR representative, Tom Schmitt.

59.   Mr. Schmitt advised Mr. Khan that OneBeacon could not do anything to change the way certain employees perceived him and that the company could not fire employees for making racist comments.

60.   Thereafter, in November 2010, without first discussing the decision with Mr. Khan, OneBeacon transferred him to the supervision of Philip Sibilia, who replaced Mr. McKenna as Mr. Khan's direct manager.

61.   On June 28, 2011, Mr. Khan sent an e-mail to Ray Barrette, the CEO of White Mountain Insurance Group (OneBeacon's parent company), advising Mr. Barrette of the discrimination Mr. Khan was experiencing at OneBeacon.

62.   Receiving no response, Mr. Khan then filed a Charge of Discrimination with the MCAD and the EEOC on July 8, 2011 (the "Charge").

63.   Shortly thereafter, White Mountain General Counsel, Robert Seelig, asked OneBeacon's Deputy General Counsel, Joan Geddes, to speak with Mr. Khan about his e-mail to Mr. Barrette.

64. When Mr. Khan advised Ms. Geddes that he had filed the Charge, however, she refused to discuss his experiences of discrimination and ended the meeting abruptly, despite Mr. Khan's assurances that he was not represented by counsel.

65. Approximately two weeks later, Mr. Khan arrived at OneBeacon to find that his work area had been ransacked, upon information and belief, in retaliation for filing the Charge.

66. Specifically, Mr. Khan's papers were scattered all over the floor, files were missing from his drawers and personal possessions were missing.

67. Mr. Khan reported the incident to Mr. Sibilia, yet no individual or group of individuals was reprimanded.

### OneBeacon Discriminates And Retaliates Against Mr. Khan In Intra-Company Hiring

68. In August 2010, Mr. Khan learned that OneBeacon intended to terminate his position in the fourth quarter of 2013 as part of a reduction in force.

69. Thereafter, Mr. Khan began applying for other positions within OneBeacon.

70. Mr. Sibilia, Mr. Khan's new supervisor, and with whom Mr. Khan had an excellent relationship, recommended Mr. Khan for each of these positions.

71. Specifically, Mr. Khan inquired about three positions at OneBeacon.

72. Upon information and belief, Mr. Khan was qualified for all three of the positions, yet OneBeacon refused to hire Mr. Khan because of his race, religion, and/or national origin, and because he had filed the Charge.

73. In January 2011, Mr. Khan applied for a new Claims Examiner position.

74. Mr. Sibilia called Ms. Bender to recommend Mr. Khan for the position.

75. Despite Mr. Khan's qualifications and favorable interviews, he did not receive the position.

76. Instead, the position was given to a Caucasian, American-born employee who, upon information and belief, was less qualified for the position than was Mr. Khan.

77. At the time, Mr. Sibilia told Mr. Khan that he had voiced his concern to Peter McCarron, Vice President of Claims, and Ms. Bender that Mr. Khan was not offered the position, since, according to Mr. Sibilia, he was clearly the best-qualified applicant.

78. On February 25, 2011, Mr. Khan received a performance review indicating that he had "fully achieved" his goals and objectives, and that his overall performance was "fully successful." In the review, Mr. Sibilia noted that Mr. Khan "is capable of a more significant role within Claims" and that "[t]he plan is to redeploy him into a role in the Specialty Claims organization should suitable opportunities arise."

79. In or about June 2011, Mr. Khan learned of another Claims Examiner position at OneBeacon.

80. Mr. Khan sent an e-mail to his former manager, Ms. Bender, then Vice President of Claims, to inquire about the position.

81. Ms. Bender responded that the position was instead for a Senior Claims Representative, which was in a lower pay grade. Ms. Bender thus discouraged Mr. Khan from applying for the position.

82. Shortly thereafter, however, Mr. Khan saw a posting for the position and learned that it was indeed a position for an Examiner at his pay grade.

83. OneBeacon gave the Claims Examiner position to a less qualified Caucasian, American-born employee of the company.

84. Mr. Sibilia told Mr. Khan that he had expressed his view to William Queenen, Director of HR, that Mr. Khan was the best candidate for the position, and his disappointment in Ms. Bender that she would discourage Mr. Khan from applying.

85. In August 2011, Mr. Khan applied for another position within his grade level and for which he was completely qualified.

86. Ms. Bender interviewed Mr. Khan for the position.

87. Ms. Bender spent the interview asking Mr. Khan basic questions about his record—questions to which she already knew the answers. Ms. Bender also expressed to Mr. Khan that she did not know anything about his work at the firm.

88. This shocked Mr. Khan, who had previously worked with Ms. Bender for *sixteen* years. Not only had she requested, on multiple occasions, that he train other employees, but she had also complemented him on his outstanding performance just months earlier.

89. The position was given to a Caucasian, American-born employee who, upon information and belief, was less qualified than Mr. Khan.

90. Mr. Sibilia told Mr. Khan that he expressed shock to Mr. Geddes and Mr. Queenen that the company would deny employment to Mr. Khan considering his qualifications.

91. Mr. Sibilia told Mr. Khan that it was "laughable" that Ms. Bender claimed that she "did not remember" his work and said that someone at the company must "have gotten to her."

92. Upon information and belief, Ms. Bender, in part, refused to hire Mr. Khan due to his complaining of discrimination to HR, and because Mr. Khan filed a Charge against the company.

93. Upon information and belief, Ms. Bender, a former supervisor of Mr. Kretschmar, discriminated against Mr. Khan out of fear of being reprimanded by OneBeacon for providing internal transfer to an employee that had complained of discrimination.

### OneBeacon Attempts to Destroy Evidence Of Discrimination

94. In or about early January 2012, a computer specialist from OneBeacon contacted Mr. Khan requesting access to his computer for a number of hours.

95. The specialist purportedly needed to access the computer remotely as a result of the Claims Department having moved from one office to another.

96. The computer specialist informed Mr. Khan that his computer had been designated as "extra sensitive."

97. The computer specialist further advised Mr. Khan that a company security clearance was required in order to access the contents of his computer.

98. Upon information and belief, no other employee's computer was designated as "extra sensitive."

99. Thereafter, Mr. Khan discovered that a folder on his computer marked as "Personal" had been opened and viewed. Mr. Khan also discovered that confidential documents regarding his claims of discrimination and retaliation had been deleted from that folder—while other files not related to Mr. Khan's claim of discrimination were left untouched.

100. After notifying Mr. Sibilia, Mr. Khan immediately told Mr. Queenan and Ms. McDevitt of HR what had transpired.

101. Specifically, Mr. Khan complained to them that he believed he was being targeted by OneBeacon because he had complained that he was the victim of discrimination.

102. Mr. Khan requested that OneBeacon stop retaliating against him for complaining of discrimination.

103. Despite Mr. Khan's complaints, OneBeacon failed and/or refused to take any action to stop the continuing discrimination and retaliation.

104. On January 28, 2012, and again on February 27, 2012, Mr. Khan submitted a written complaint via email to Mr. Miller and Mr. Barrette.

105. Thereafter, Mr. Khan was instructed by OneBeacon's legal counsel to stop reporting incidents of discrimination and retaliation directly to OneBeacon management.

### One Beacon Refuses to Issue Mr. Khan his Annual Performance Review And Thereafter Terminates His Employment

106. Mr. Sibilia told Mr. Khan that he was going to give him a "glowing review" for the 2011 year.

107. Upon information and belief, in early 2012, OneBeacon issued to all employees their annual performance evaluations for the 2011 year.

108. Upon information and belief, all similarly situated employees to Mr. Khan received their annual reviews.

109. OneBeacon, however, refused to issue Mr. Khan his 2011 annual written performance evaluation.

110. Upon information and belief, OneBeacon refused to issue Mr. Khan his 2011 annual review in retaliation for his complaining to HR of discrimination.

111. On February 23, 2012, Mr. Khan was notified that his employment at OneBeacon was being terminated effective March 23, 2012 as part of a reduction in force.

112.    From 2010 through March 23, 2012, Mr. Khan performed his duties in a manner that exceeded expectations. Mr. Khan received numerous accolades from the company, including bonuses in recognition of his outstanding performance.

113.    Upon information and belief, OneBeacon terminated Mr. Khan's employment nearly a year and a half earlier than originally intended in retaliation for his complaining of discrimination and used the pending reduction in force as a pretext for discrimination and retaliation.

## FIRST CLAIM
(Race & National Origin Discrimination Under Title VII)

114.    Plaintiff repeats and realleges all of the allegations contained herein.

115.    At all relevant times, Plaintiff was an "employee" of OneBeacon under Title VII, 42 U.S.C. § 2000e(f).

116.    OneBeacon is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

117.    By its actions as detailed above, OneBeacon engaged in unlawful discrimination against Mr. Khan on the basis of his race and/or national origin.

118.    As a result of OneBeacon's discriminatory conduct, Mr. Khan has suffered substantial damages, including damages for mental anguish, in amounts to be determined at trial.

## SECOND CLAIM
(Religious Discrimination Under Title VII)

119.    Plaintiff repeats and realleges all of the allegations contained herein.

120.    Mr. Khan is a member of the Islamic faith.

121. By its actions as detailed above, OneBeacon engaged in unlawful discrimination against Mr. Khan on the basis of his religion.

122. As a result of OneBeacon's discriminatory conduct, Mr. Khan has suffered substantial damages, including damages for mental anguish, in amounts to be determined at trial.

### THIRD CLAIM
(Race & National Origin Discrimination Under 42 U.S.C. § 1981)

123. Plaintiff repeats and realleges all of the allegations contained herein.

124. By their actions as detailed above, Defendants have unlawfully discriminated against Mr. Khan on the basis of his race and national origin.

125. Defendants' conduct towards Mr. Khan constitutes an infringement of his right to make and enforce contracts in violation of Section 1981.

126. Defendants' discriminatory conduct was done with malice and/or reckless indifference to Mr. Khan's rights.

127. As a result of Defendants' discriminatory conduct, Mr. Khan has suffered substantial damages, including damages for mental anguish, in amounts to be determined at trial.

### FOURTH CLAIM
(Retaliation Under 42 U.S.C. § 1981)

128. Plaintiff repeats and realleges all of the allegations contained herein.

129. By their actions as detailed above, Defendants have unlawfully retaliated against Mr. Khan for complaining of discrimination on account of his race and national origin.

130. Defendants' conduct towards Mr. Khan constitutes an infringement of his right to make and enforce contracts in violation of Section 1981.

131. Defendants' retaliatory conduct was done with malice and/or reckless indifference to Mr. Khan's rights.

132. As a result of Defendants' discriminatory conduct, Mr. Khan has suffered substantial damages, including damages for mental anguish in amounts, to be determined at trial.

## FIFTH CLAIM
(Retaliation Under Title VII)

133. Plaintiff repeats and realleges all of the allegations contained herein.

134. By its actions as detailed above, OneBeacon unlawfully retaliated against Mr. Khan for complaining of discrimination on account of his (1) race; (2) national origin; and (3) religious affiliation.

135. As a result of OneBeacon's discriminatory conduct, Mr. Khan has suffered substantial damages, including damages for mental anguish, in amounts to be determined at trial.

## SIXTH CLAIM
(Discrimination Based On Race & National Origin Under
Mass. Gen. Laws. ch. 151B § 4 et seq.)

136. Plaintiff repeats and realleges all of the allegations contained herein.

137. At all relevant times, Plaintiff was an "employee" of OneBeacon under Mass. Gen. Laws. ch. 151B § 1 et seq.

138. OneBeacon is an "employer" under Mass. Gen. Laws. ch. 151B § 1 et seq.

139. By their actions as detailed above, Defendants have unlawfully discriminated against Mr. Khan on the basis of his race and/or national origin in violation of the Massachusetts Fair Employment Practices Act.

140. As a direct and foreseeable result of Defendants' unlawful conduct, Mr. Khan has incurred, and continues to incur, financial, emotional distress and other related damages, in amounts to be determined at trial.

### SEVENTH CLAIM
(Discrimination Based On Religion Under
Mass. Gen. Laws. ch. 151B § 4 et seq.)

141. Plaintiff repeats and realleges all of the allegations contained herein.

142. By their actions as detailed above, Defendants have unlawfully discriminated against Mr. Khan on the basis of his religious affiliation in violation of the Massachusetts Fair Employment Practices Act.

143. As a direct and foreseeable result of Defendants' unlawful conduct, Mr. Khan has incurred, and continues to incur, financial, emotional distress and other related damages, in amounts to be determined at trial.

### EIGHTH CLAIM
(Retaliation Under Mass. Gen. Laws. ch. 151B, § 4(4))

144. Plaintiff repeats and realleges all of the allegations contained herein.

145. By their actions as detailed above, Defendants have unlawfully retaliated against Mr. Khan for complaining of discrimination on account of his (1) race; (2) national origin; and/or (3) religious affiliation in violation of the Massachusetts Fair Employment Practices Act.

146. As a direct and foreseeable result of Defendants' unlawful conduct, Mr. Khan has incurred, and continues to incur, financial, emotional distress and other related damages, in amounts to be determined at trial.

## NINTH CLAIM
(Interference with Statutory Rights Under Mass. Gen. Laws. ch. 151B, § 4(4A))

147. Plaintiff repeats and realleges all of the allegations contained herein.

148. The actions of Defendants, as described above, were coercive, intimidating, threatening or otherwise intended to interfere with Mr. Khan's exercise and enjoyment of his legal rights under state and federal law.

149. As a direct and foreseeable result of Defendants' unlawful conduct, Mr. Khan has incurred, and continues to incur, financial, emotional distress and other related damages, in amounts to be determined at trial.

WHEREFORE, Plaintiff prays that this Court grant judgment to him containing the following relief:

1. An award of Mr. Khan's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of back pay and an award of reinstatement or front pay;

2. An award of damages in an amount to be determined at trial to compensate Mr. Khan for mental anguish, humiliation, embarrassment, and emotional injury;

3. An award of punitive damages;

5. An award of reasonable attorneys' fees and the costs of this action; and

6. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       December 17, 2012

                                  LIDDLE & ROBINSON, L.L.P.

                        By: _____
                              Andrea M. Paparella, BBO# 658254
                              Judd Rothstein, BBO # 682693
                              800 Third Avenue
                              New York, New York 10022
                              Tel: (212) 687-8500
                              Fax: (212) 687-1505
                              apaparella@liddlerobinson.com
                              jrothstein@liddlerobinson.com

                              *Attorneys for Plaintiff*